UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

UNITED STATES OF
AMERICA,

v.                                          CASE NO.  8:11-CR-181-T-17MAP

KENNETH H. BURKE, JR.

_____/


ORDER

This cause is before the Court on:


Dkt. 39    Amended Motion to Suppress
Dkt. 50    Response

The Court heard oral argument on the Amended Motion to Suppress on
November 28, 2011.  The Court has considered the testimony and Exhibits offered at
the hearing.


The Court notes that the Amended Motion to Suppress is moot as to the search
conducted on February 17, 2011.  The Government indicated at the hearing that the
Government does not intend to introduce the evidence obtained on February 17, 2011.


ATF agents searched 3022 Avenida Republica de Cuba, Apt. 108, Tampa, FL on
February 15, 2011, after "HLS" signed a consent form.  The apartment at the above
address is a 2-bedroom, 2-bath apartment.  HLS occupied one bedroom, and Kenneth
Burke, Jr. testified that he intermittently stayed in the other bedroom, to look after HLS.

I. Standing

The legitimacy of a defendant's privacy claim is determined by the totality of the circumstances. Rakas v. Illinois, 439 U.S. 128, 152 (1978). The relevant factors include: 1) whether the defendant has a possessory interest in the thing seized or the place searched; 2) whether the defendant has exhibited a subjective expectation that [the property] would remain free from governmental invasion; 3) whether the defendant took normal precautions to maintain his privacy; and 4) whether the defendant was legitimately on the premises.

Defendant Burke did not own or rent the premises searched. Defendant Burke contends that his status as a frequent overnight guest or transient resident justifies Defendant's subjective expectation of privacy. There was testimony that Defendant Burke and Kenneth Burke, Sr. regarded HLS as "family" and the "family" relationship was of long-standing duration.

There was testimony that Defendant Burke had a key to the apartment and could exclude others. Assuming that Defendant Burke did have a key, the Court infers that Defendant Burke occupied the second bedroom in HLS' apartment from time to time with HLS' permission. There is conflicting evidence as to whether Defendant Burke was the primary occupant of the second bedroom, and caretaker of HLS, or whether "ME" was the primary occupant and caretaker (Defendant's Exhibit 1,Testimony of Mia English). The Court notes that only very few items of clothing and other personal effects of Defendant Burke were identified in the second bedroom.

Defendant Burke turned himself in on 2/5/2011. At the time of the search on 2/15/2011, Defendant Burke was in custody. The Court notes that, at the time of Defendant Burke's arrest, Defendant Burke gave another address as his residence. There was no evidence offered as to any normal precautions Defendant Burke took to

maintain Defendant's privacy in the premises searched, such as putting a lock on the door of the bedroom that Defendant Burke testified that he occupied on a semi-regular basis. There is no evidence that, after Defendant Burke turned himself in on 2/5/2011, Defendant Burke took any steps to maintain his privacy, such as communicating with HLS, the lessee of the apartment, or with another caretaker or family member, Defendant's desire to maintain the privacy of any possessions in the room Defendant Burke intermittently occupied.

The apartment lease executed by HLS (Government Exhibit 327) does not include Defendant Burke as a resident of the apartment. If Defendant Burke had been identified on the lease, the management of the apartment complex would have conducted a background check. Defendant Burke could not have passed a background check, due to Defendant's past convictions and incarceration. Defendant Burke was not a "resident" of HLS' apartment with the permission of the management of the apartment, under the terms of the lease executed by HLS.

The evidence establishes that Defendant Burke had a subjective expectation of privacy; the question is whether Defendant Burke's expectation of privacy is one which society recognizes as legitimate. If Defendant Burke occupied the second bedroom in HLS' apartment intermittently prior to 2/5/2011, after Defendant Burke turned himself in on 2/5/2011, Defendant Burke could not have expected to return to the apartment to continue Defendant's intermittent residence. If Defendant Burke had a long-standing familial type of relationship with HLS in the past, on 2/15/2011, Defendant Burke was not a guest, occupying the premises with the permission of HLS, and there was no realistic expectation that Defendant Burke would return to occupy the premises, since Defendant Burke remained in custody.

After considering the totality of the circumstances, the Court concludes that Defendant Burke does not have standing to challenge the search of the premises

conducted on 2/15/2011, to which HLS, the lessee of the premises, consented.

II. Consent

Defendant Burke argues that the long-standing mental problems of HLS prevented HLS from giving a voluntary consent to the search of HLS' apartment on 2/15/2011.

The Court must consider the totality of the circumstances, including the age, maturity, education, intelligence and experience of the consentor, and the conditions under which the consent was given.

The TPD reports establish that HLS had memory impairment before and after the search of 2/15/2011. The Court notes that HLS executed the lease for her apartment, the term of which ran from 6/1/2010 to 5/31/2011. The Court also notes that there was testimony that on 2/15/2011 HLS was initially confused about whether she was at home, but, after further conversation, HLS became clear on that issue. HLS accurately remembered that Defendant Burke had a past history of trouble with the law, and HLS identified her own bedroom. HLS' signature on the consent of 2/15/2011 (Government Exhibit 322) closely resembles HLS' signature on the lease of 6/1/2010; both signatures are legible and without misspelling.

The Court notes that HLS was living in her own apartment, and did not reside in an assisted living facility on 2/15/2011. HLS was alone in her apartment each time (three separate occasions) the ATF agent requested consent to search her apartment. The Court understands that HLS was capable of living independently, with some help from caretakers. There is no evidence that a guardian had been appointed for HLS as of 2/15/2011. No medical evidence or expert testimony was offered by the Government or by Defendant as to the capacity of HLS to understand the nature of her actions on

2/15/2011. Assuming that at some time HLS was diagnosed as having Alzheimer's disease, a diagnosis of Alzheimer's disease does not mean that the person suffering from the disease is inevitably incapable of voluntary consent to a search. Alzheimer's disease is commonly known as "the long good-bye." The memory impairment of Alzheimer's disease may be a long process of gradual decline, with some periods of confusion and some lucid intervals. That HLS was found wandering and confused on other days does not establish that on 2/15/2011, HLS did not understand the request for her consent to search the premises.

The ATF agent testified that on 2/15/2011, he was in plain clothes, but wearing a badge. The ATF agent testified that the only information he had as to HLS was that found on the HLS' driver's license. There was testimony that HLS wanted to cooperate the ATF agent, and there is no evidence that HLS signed the consent form due to intimidation or coercion by the ATF agent, without any understanding of the contents.

Based on the totality of the circumstances, the Court determines as a matter of fact that HLS had the capacity to understand the nature and significance of her actions on 2/15/2011. After consideration, the Court concludes that the search of 2/15/2011 was conducted after HLS gave her voluntary consent to the search of her apartment. Even if Defendant Burke were found to have standing to challenge the search, the voluntary consent of HLS cures any Fourth Amendment violation alleged. Accordingly, it is

**ORDERED** that Defendant Burke's Amended Motion to Suppress (Dkt. 39) is **denied** as to the search on 2/15/2011, and **denied as moot**, as to the search on 2/17/2011.

Case No. 8:11-CR-181-T-17MAP

**DONE and ORDERED** in Chambers, in Tampa, Florida on this
29th day of November, 2011.

ELIZABETH A. KOVACHEVICH
United State District Judge

Copies to:
All parties and counsel of record